**No. 21-50068**

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

———

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

v.

**RUDY ALVAREZ,**

Defendant-Appellant.

———

Appeal from the
United States District Court
for the Southern District of California
Honorable Larry A. Burns Presiding

———

**APPELLANT'S PETITION FOR PANEL REHEARING AND
SUGGESTION OF REHEARING EN BANC**

———

Kara Hartzler CSB 293751
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467
Kara_Hartzler@fd.org

Attorneys for Appellants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... II

INTRODUCTION ................................................................................... 1

BACKGROUND ..................................................................................... 3

ARGUMENT .......................................................................................... 9

    I.    This Court's interpretation of the controlling holding from *Seibert* is both incorrect and inconsistent with other circuits' .......................................................................... 9

        A.    This Court's adoption of Justice Kennedy's concurrence contradicts the holding of seven justices and applies the same factors twice ................ 10

        B.    This Court's reading of *Seibert* aggravates an already-chaotic circuit split. ....................................... 16

    II.    The panel also created a new inter-circuit split by placing the burden on Mr. Alvarez to show deliberateness ........................................................................ 18

CONCLUSION ..................................................................................... 22

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                **Page(s)**

*Missouri v. Seibert,*
   542 U.S. 600 (2004) ................................................................ *passim*

*Reyes v. Lewis,*
   833 F.3d 1001 (9th Cir. 2016) .................................................... 14, 15

*United States v. Alvarez,*
   2022 WL 17958625 (9th Cir. Dec. 27, 2022) ................. 2, 8, 9, 20, 21

*United States v. Capers,*
   627 F.3d 470 (2d Cir. 2010) ....................................................... 17, 19

*United States v. Courtney,*
   463 F.3d 333 (5th Cir. 2006) ........................................................... 17

*United States v. Guillen,*
   995 F.3d 1095 (10th Cir. 2021) ............................................. 17, 18, 19

*United States v. Heron,*
   564 F.3d 879 (7th Cir. 2009) ........................................................... 16

*United States v. Mashburn,*
   406 F.3d 303 (4th Cir. 2005) ........................................................... 17

*United States v. Naranjo,*
   426 F.3d 221 (3d Cir. 2005) ........................................................... 17

*United States v. Ollie,*
   442 F.3d 1135 (8th Cir. 2006) ................................................... 17, 18

*United States v. Phipps,*
   290 F. App'x 38 (9th Cir. 2008) ........................................................ 7

*United States v. Ray,*
   803 F.3d 244 (6th Cir. 2015) ........................................................... 17

*United States* v. *Rodriguez-Preciado,*
   399 F.3d 1118 (9th Cir. 2005) .................................................... 13, 14

*United States v. Stewart,*
   536 F.3d 714 (7th Cir. 2008) ...................................................20, 21

*United States v. Street,*
   472 F.3d 1298 (11th Cir. 2006) ........................................................ 17

*United States v. Widi,*
   684 F.3d 216 (1st Cir. 2012) ........................................................... 17

*United States v. Williams*,
   435 F.3d 1148 (9th Cir. 2006) ................................................. *passim*

## Federal Statutes

18 U.S.C. § 39A........................................................................................ 6

## Federal Rules

Fed. R. App. P. 35 .................................................................................. 2

Fed. R. App. P. 40 .................................................................................. 2

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | U.S.C.A. No. 21-50068 |
| Plaintiff-Appellee, | U.S.D.C. No. 20-CR-1809-LAB |
| v. | |
| RUDY ALVAREZ, | **APPELLANT'S PETITION FOR PANEL REHEARING AND SUGGESTION OF REHEARING EN BANC** |
| Defendant-Appellant. | |

## INTRODUCTION

In *Missouri v. Seibert*, 542 U.S. 600 (2004), the Supreme Court issued a fractured decision regarding "midstream *Miranda* warnings"—warnings given after police have already begun interrogating an individual. A four-justice plurality held that the admissibility of statements made after such warnings hinges on whether the warning remained *objectively* effective. Concurring, Justice Kennedy disagreed, opining that the admissibility of such statements hinges on the police's *subjective* intent—i.e., whether officers deliberately delayed the warnings to elicit statements in violation of *Miranda*.

In the two decades since *Seibert*, courts have struggled to apply this decision, leaving the jurisprudence of this Court and others a mess.

1

Most of the confusion stems from whether the plurality's or Justice Kennedy's rule controls. Although this Court held in *United States v. Williams*, 435 F.3d 1148 (9th Cir. 2006), that Justice Kennedy's concurrence controls, Judges Berzon, Callahan, O'Scannlain, Tallman, Bea, and Ikuta have all strongly disagreed with *Williams'* conclusion. *Williams* further complicated the issue by holding that Justice Kennedy's deliberateness test simply involves applying the plurality's objective factors—twice. Other circuits have taken different approaches. To resolve this confusion and seek national unity among the circuits, this Court should grant en banc review. *See* Fed. R. App. P. 35(a)(1).

The panel here also created a brand new intercircuit split by placing the burden to show deliberateness on Mr. Alvarez, rather than the government. *See United States v. Alvarez*, 2022 WL 17958625, at *2 (9th Cir. Dec. 27, 2022). Every other circuit that has decided this issue has placed the burden on the government. Given the evidence here suggesting that at least one officer acted deliberately, the placement of this burden mattered. Thus, this Court should also grant panel or en banc rehearing to resolve the open question of who bears the burden to prove deliberateness. *See* Fed. R. App. P. 35(a)(1), 40(a)(2).

2

## BACKGROUND

Several weeks after George Floyd's death, 23-year-old Rudy
Alvarez and several thousand other people attended a peaceful Black
Lives Matter march in downtown San Diego. 3-ER-335. After the
march, Mr. Alvarez began walking home. Suddenly, an unmarked van
screeched to a stop next to him. 3-ER-339. Police officers dressed in
SWAT gear and bullet-proof vests jumped out and ran towards him
screaming, "Police, on the ground, on the ground!" 3-ER-340.
Mr. Alvarez immediately complied. 3-ER-340–41. Officers handcuffed
him, frisked him, and told him that he was under arrest for "pointing a
laser at a helicopter" during the march. 3-ER-341.

The police loaded Mr. Alvarez into the van and drove towards
Qualcomm stadium, a local landmark that police were using as a
command center. 3-ER-296, 341. During the fifteen-minute drive, police
did not give Mr. Alvarez any *Miranda* warnings. Nevertheless,
Detective Haughey, an experienced officer normally assigned to a
fugitive apprehension unit, began talking to Mr. Alvarez. 2-ER-122–23;
3-ER-295–303. He asked Mr. Alvarez leading questions about whether
Mr. Alvarez understood the dangers of pointing a laser at a helicopter.

3

3-ER-296–97. In response, Mr. Alvarez made several incriminating statements. 3-ER-296–305. During the drive, Detective Haughey also made conclusory statements about Mr. Alvarez's guilt, including admonishing him for having "pointed that stupid laser." 3-ER-298–299.

At the stadium, Detective Haughey told Mr. Alvarez he would "read you your rights really quick" so they could "go over your paperwork," and talk about "what happened"—all of which were "typical things." 3-ER-310. Detective Haughey then read a *Miranda* advisal from a waiver form entitled "Federal Bureau of Investigation Advice of Rights." 3-ER-311–12, 334.

But Detective Haughey did not read these rights as they appeared on the waiver form. For instance, rather than advise Mr. Alvarez that "[a]nything you say can be used against you in court," Detective Haughey stated, "If anything you say can be used in the court. Argh! (stretches) Against you[.]" 3-ER-311, 334. Then he omitted one of the form's references to a lawyer and told Mr. Alvarez that "if you uh decide to talk to us or whatever while we're talking at anytime you can tell us, 'hey you know what, I don't want to talk anymore.' That kind of stuff." 3-ER-311, 334.

But after giving the *Miranda* advisal, Detective Haughey did not immediately have Mr. Alvarez sign the waiver form. 3-ER-312. Instead, he invited Mr. Alvarez to explain, saying that "I know when we contacted you, you said you knew it was a stupid idea kind of thing"— even though it was Detective Haughey, not Mr. Alvarez, who had said this. 3-ER-312. Mr. Alvarez then explained that he had no idea pointing a laser could cause any harm or damage and made other incriminating statements. 3-ER-312–14.

At the end of the interrogation, the officers finally had Mr. Alvarez sign the *Miranda* waiver. 3-ER-330. As Mr. Alvarez was preparing to sign, Detective Haughey said as an aside to the other officer, "Yeah, [p]ro per it is, yeah"—indicating in terms Mr. Alvarez did not understand that he was agreeing to waive his right to have a lawyer present. 3-ER-330. But to Mr. Alvarez, Detective Haughey said, "You'll see, you'll be fine." 3-ER-330. Mr. Alvarez then signed the form, and the interrogation ended. 3-ER-330–31.

The government charged Mr. Alvarez with aiming a laser pointer at an aircraft under 18 U.S.C. § 39A. 3-ER-359. As the case proceeded to trial, Mr. Alvarez filed a motion to suppress his statements made

5

during the stadium interrogation.[1] 3-ER-352–58. In this motion,

Mr. Alvarez argued that Detective Haughey had made a "midstream

*Miranda* warning" described in *Missouri v. Seibert*, 542 U.S. 600 (2004).

3-ER-354–58. Under this "midstream" technique, an officer coaxes a

person into making pre-warning admissions, then administers *Miranda*

warnings, then asks the person to repeat the confession by referring

back to the original admissions. 3-ER-354–58.

The government did not seek to admit most of Detective

Haughey's conversation with Mr. Alvarez in the van, implicitly

conceding that it was custodial interrogation. 3-ER-253. The district

court agreed, saying that most of the "questioning" in the van "should

have been preceded by *Miranda* warnings." 1-ER-5.

Nevertheless, the district court declined to suppress Mr. Alvarez's

post-*Miranda* confession under *Seibert*. The court agreed that some of

Detective Haughey's questions at the stadium "broach on subject matter

that was covered during the drive over." 1-ER-18. But the court found

this was "just coincidental" and that there was "no evidence that there

---

[1] Mr. Alvarez also moved to suppress one of his statements made
during the van ride but does not renew that argument here.

was any prearranged plan, as in *Seibert*," to evade *Miranda*. 1-ER-17,

18. The court thus denied the motion to suppress, and a jury convicted

Mr. Alvarez of the single count.

On appeal, Mr. Alvarez renewed his argument that *Seibert*

required suppression of Mr. Alvarez's post-*Miranda* statements. AOB

29–47. At the outset, Mr. Alvarez acknowledged that this Court had

adopted Justice Kennedy's concurrence in *Seibert*, which required

courts to find that officers had deliberately used the "two-step

technique." AOB 31 (citing *United States v. Williams*, 435 F.3d 1148,

1154–57 (9th Cir. 2006)). But he pointed out that the circuits were

deeply divided on this question and reserved the right to argue that

*Williams* had been wrongly decided. AOB 31.

Even if *Williams were* correct, Mr. Alvarez urged the panel to

resolve the open question of which side bears the burden to show that

an officer did or did not act deliberately under *Seibert*. AOB 31–32

(citing *United States v. Phipps*, 290 F. App'x 38, 39 (9th Cir. 2008), as

acknowledging that the placement of this burden remains an open

question). He argued that this burden should rest on the government,

noting that every other circuit to have decided the issue had held as much. AOB 31–32.

The question of which party bore the burden to show deliberateness especially mattered in his case, Mr. Alvarez explained, because the district court had found an *absence* of evidence regarding Detective Haughey's intent. 1-ER-17–18. The court's finding also never addressed the fact that Detective Haughey had questioned Mr. Alvarez in the van without *Miranda* warnings, misread and downplayed the *Miranda* advisal at the stadium, delayed having Mr. Alvarez sign the form, lied about Mr. Alvarez's prior statements, and gloated to his colleague about securing a waiver of counsel. 1-ER-17–18. Because the district court had placed the burden to show deliberateness on the defense and thus applied the wrong legal standard, Mr. Alvarez argued that the panel must review the district court's finding de novo, rather than for clear error. ARB 12–13.

In a memorandum disposition, a three-judge panel disagreed. *See Alvarez*, 2022 WL 17958625, at *2. Adhering to *Williams*, the panel stated that "Justice Kennedy's concurring opinion controls," thus requiring a finding of deliberateness. *Id*. The panel also ignored

8

Mr. Alvarez's request to resolve the open question of which party bore the burden to show deliberateness. *See id.* Like the district court, the panel appeared to place the burden on Mr. Alvarez, twice stating that it found no "clear error" in the district court's decision. *Id.* This petition follows.

## ARGUMENT

### I.     This Court's interpretation of the controlling holding from *Seibert* is both incorrect and inconsistent with other circuits'.

"The confusion and lack of uniformity stemming from *Seibert* have resulted in inconsistent rulings, unpredictable law, and confusion as to how to handle *Miranda*-in-the-middle issues." Kristen Johnson, "*Can You Say That Again?*": *A Comparative Analysis of Circuit Courts' Interpretations of Mid-Stream Interrogation Warnings*, 59 U. Louisville L. Rev. 549, 567 (2021). This confusion "allow[s] police to take advantage of suspects, thus creating potential loopholes in law enforcement interrogation practices." *Id.* Here, not only has this Court landed on the wrong side of the circuit split, it has misinterpreted Justice Kennedy's deliberateness requirement to require judges to merely apply the same factors twice.

9

**A.** **This Court's adoption of Justice Kennedy's concurrence contradicts the holding of seven justices and applies the same factors twice.**

In *Seibert*, the Supreme Court considered whether the common police tactic of issuing a "midstream recitation" of *Miranda* warnings could "effectively comply with *Miranda*'s constitutional requirement." 542 U.S. at 604. A four-judge plurality, written by Justice Souter, held that this tactic could threaten the ability of *Miranda* warnings to "function effectively." *Id.* (quotations omitted). To determine whether a midstream *Miranda* warning had nevertheless given an adequate advisal in a particular case, the plurality required courts to consider a series of objective factors, including: "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at 615. Importantly, the plurality explained that because "the intent of the officer will rarely be as candidly admitted as it was here … the focus is on facts *apart from*

10

*intent* that show the question-first tactic at work." *Id.* at 617 n.6 (emphasis added).

But Justice Kennedy's concurring opinion believed the plurality's opinion "cuts too broadly" and proposed a subjective requirement that "differ[ed] in some respects." *Id.* at 618, 622. Under this test, Justice Kennedy would only exclude such statements if a "deliberate two-step strategy was employed" and no "curative measures are taken." *Id.* at 622. As examples of "curative measures," Justice Kennedy suggested that a "substantial break in time and circumstances" before the *Miranda* warning or "an additional warning that explains the likely inadmissibility of the prewarning custodial statement" could suffice. *Id.* But Justice Kennedy never explained how courts should go about determining the first part of this test—whether an officer acted "deliberately."

Several years after *Seibert*, this Court attempted to discern whether *Seibert*'s fractured opinion "contains a precedential holding" that courts must apply. *Williams*, 435 F.3d at 1157. Doing so required this Court to "identify and apply a test which satisfies the requirements

of both Justice Souter's plurality opinion and Justice Kennedy's concurrence." *Id.*

*Williams* correctly noted that "Justice Kennedy did not articulate how a court should determine whether an interrogator used a deliberate two-step strategy." *Id.* at 1158. But instead of fashioning a separate "deliberateness" test, *Williams* simply held that the same "objective factors" used to determine a warning's effectiveness, together with "any available subjective evidence, such as an officer's testimony," would show whether an officer acted deliberately. *Id.* at 1158–59; *see also id.* ("[W]e hold that in determining whether the interrogator deliberately withheld the *Miranda* warning," courts should consider "objective evidence" of "the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and postwarning statements").

In other words, neither Justice Kennedy nor *Williams* created a separate test for determining whether officers deliberately employed the "two-step technique." Rather, *Williams* simply held that courts should apply the same "objective factors" *twice*—once to determine the

12

officers' deliberateness and a second time to determine the *Miranda* warning's effectiveness. *See id.* at 1162.

Numerous judges of this Court have disagreed with *Williams'* reasoning. A year before *Williams*, Judge Berzon undertook a prescient analysis of "what rule, if any, the fractured Supreme Court handed down in *Missouri v. Seibert*." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1133 (9th Cir. 2005) (Berzon, J., dissenting in part). Judge Berzon would have "follow[ed] the reasoning of the *Seibert* plurality," rather than Justice Kennedy's concurrence. *Id.* She explained that "three of the four Justices in the plurality *and* the four dissenters decisively rejected any subjective good faith consideration, based on deliberateness on the part of the police." *Id.* at 1139. So "while Justice Kennedy's was the crucial fifth vote for the result," his opinion "is *not* the narrowest opinion embodying a position supported by at least five Justices in the majority. It embodies a position supported by two Justices, at most." *Id.* at 1140. Because "*Seibert* leaves this court in a situation where there is no binding Supreme Court or Ninth Circuit precedent as to the governing standard," Judge Berzon recommended

13

"adopting the *Seibert* plurality's standard as the law of the circuit," *id.* at 1141—a recommendation *Williams* then ignored.

A decade later, Judge Callahan (joined by Judges O'Scannlain, Tallman, Bea, and Ikuta) also rejected *Williams*' reasoning. Dissenting from a denial of rehearing en banc, Judge Callahan stated that "the plurality and dissent expressly (and even more emphatically) rejected Justice Kennedy''s reasoning in *Seibert.*" *Reyes v. Lewis*, 833 F.3d 1001, 1008 (9th Cir. 2016). Because "three of the four Justices in the plurality and the four dissenters decisively rejected" a deliberateness requirement, Judge Callahan explained that this requirement had been "expressly rejected by at least seven Justices" and "cannot be elevated to the status of controlling Supreme Court law." *Id.*

This conclusion was "reinforced," Judge Callahan explained, by the fact that "there are likely to be cases where relief would be granted under Justice Kennedy's test but not the plurality's test." *Id.* For instance, a case may involve "deliberate *Miranda* violations where most of the plurality's 'effectiveness factors' are met," but "Justice Kennedy's curative measures requirement isn't." *Id.* at 1008–09. Similarly, there could be cases involving "deliberate violations where Justice Kennedy's

14

curative-measures requirement is met" but "the plurality's effectiveness requirement isn't." *Id*. at 1009. Because this shows no "common denominator" between the reasoning of the plurality's and Justice Kennedy's opinions, Judge Callahan would have held that it does not represent *Seibert*'s applicable holding. *Id*. at 1008.

These judicial criticisms of *Williams* are correct. Nowhere did the *Seibert* plurality suggest that factors designed to determine whether *Miranda* warnings "function effectively" would shed light on an officer's subjective intent. If they could, the plurality would not have labeled them "objective" factors. *Seibert*, 542 U.S. at 611. To the contrary, the plurality explained that it was necessary to analyze objective factors "apart from intent" to determine whether a reasonable person would understand their right to avoid self-incrimination. *Id*. at 617 n.6 (emphasis added).

Nor does *Williams* accurately represent Justice Kennedy's view of a deliberateness test. Given that Justice Kennedy believed the plurality's test "cuts too broadly," he could not have thought that simply applying the objective factors a second time would reveal an officer's intent (or lack thereof). *Id*. at 622. *See also id*. at 618 (stating that "my

approach does differ in some respects" from the plurality's) (Kennedy, J., concurring). Yet *Williams* ignored these plain statements, blithely holding that mere repetition of the objective factors somehow "satisfies the requirements of both Justice Souter's plurality opinion and Justice Kennedy's concurrence." 435 F.3d at 1157.

As numerous judges of this Court have recognized, *Williams* fundamentally misread *Seibert* by misconstruing the plain statements of seven justices and creating a deliberateness test that merely applies the plurality's "objective factors" twice. This Court should rehear Mr. Alvarez's case en banc to correct these errors in its *Miranda* jurisprudence.

### B. This Court's reading of *Seibert* aggravates an already-chaotic circuit split.

This Court's confusing *Seibert* analysis exacerbates national inconsistency on this issue. For instance, at least two circuits have held that Justice Kennedy's deliberateness requirement does *not* control. Noting that "Justice Kennedy's intent-based test was rejected by both the plurality opinion and the dissent in *Seibert*," the Seventh Circuit declined to "assume that the Court has announced any particular rule of law." *United States v. Heron*, 564 F.3d 879, 884, 885 (7th Cir. 2009).

Likewise, the Sixth Circuit stated, "We agree with and adopt Judge Berzon's reasoning" in *Rodriguez-Preciado* opining that no standard from *Seibert* bound lower courts. *United States v. Ray*, 803 F.3d 244, 272 (6th Cir. 2015).

By contrast, some circuits have held that Justice Kennedy's deliberateness requirement controls. *See, e.g., United States v. Ollie,* 442 F.3d 1135, 1142 (8th Cir. 2006); *United States v. Courtney*, 463 F.3d 333, 338 (5th Cir. 2006); *United States v. Mashburn*, 406 F.3d 303, 309 (4th Cir. 2005). But like *Williams*, some circuits have so held while still illogically using the plurality's "objective factors" to determine officers' subjective intent. *See United States v. Street, 472 F.3d* 1298, 1314 (11th Cir. 2006) (citing Williams to rely on the objective factors); *see also United States v. Capers*, 627 F.3d 470, 478 (2d Cir. 2010) (applying objective factors to determine deliberateness); *United States v. Naranjo*, 426 F.3d 221, 232 (3d Cir. 2005) (same); *United States v. Guillen*, 995 F.3d 1095, 1121 (10th Cir. 2021). And one circuit has declined to take a position, instead holding that it "has not settled on a definitive reading." *United States v. Widi*, 684 F.3d 216, 221 (1st Cir. 2012).

17

As these cases show, this inter-circuit conflict has "resulted in inconsistent rulings, unpredictable law, and confusion as to how to handle *Miranda*-in-the-middle issues." Johnson, 59 U. Louisville L. Rev. at 567. At a minimum, then, this Court should rehear this case en banc to reconsider whether its current approach further aggravates the circuit split.

## II.  The panel also created a new inter-circuit split by placing the burden on Mr. Alvarez to show deliberateness.

Even if *Williams* correctly held that Justice Kennedy's concurrence controls, the panel here nevertheless created a brand new intercircuit split by placing the burden to show deliberateness on Mr. Alvarez, rather than the government. To date, every court that has considered who bears this burden has concluded that it falls on the government. *See United States v. Guillen*, 995 F.3d 1095, 1121 (10th Cir. 2021) (agreeing that "we should follow the lead of our sister circuits" by requiring the government to bear the burden of proof); *see also United States v. Ollie*, 442 F.3d 1135, 1143 (8th Cir. 2006) (reversing where the government "failed to meet that burden because it produced no evidence on the question at all"); *United States v. Stewart*,

536 F.3d 714, 719 (7th Cir. 2008); *United States v. Capers*, 627 F.3d 470, 479 (2d Cir. 2010).

Placing the burden on the government to show an absence of deliberateness is "consistent with Supreme Court precedent requiring the government to prove by a preponderance of the evidence that the defendant waived his *Miranda* rights[.]" *Guillen*, 995 F.3d at 1121. Doing so "also makes sense as a practical matter because it will help ensure probative evidence, all or most of which will typically be in the government's hands, is brought to the court's attention." *Id*. After all, even *Williams* admitted that "[o]nce a law enforcement officer has detained a suspect" and begun an interrogation, "there is rarely, if ever, a legitimate reason to delay giving a *Miranda* warning until after the suspect has confessed." 435 F.3d at 1159. So if an officer *does* initiate an interrogation without *Miranda* warnings, placing this burden on the government holds it accountable by requiring it to point to a legitimate reason for delaying the warnings that did *not* involve deliberateness.

But here, neither the district court nor the panel placed the burden on the government. The court agreed that some of Detective Haughey's questions at the stadium "broach on subject matter

19

that was covered during the drive over." 1-ER-18. But the court found this was "just coincidental" and that there was "no evidence" of deliberateness. 1-ER-17, 18. Had the court correctly placed the burden on the government, this absence of evidence would have favored Mr. Alvarez's and made it harder to dismiss affirmative evidence of Detective Haughey's deliberateness as "just coincidental." It also would have prevented the panel from reviewing the court's decision for "clear error" and explaining away evidence of deliberateness in the record. *Alvarez*, 2022 WL 17958625, at *2.

Furthermore, correct placement of the burden would have made it difficult for the district court and the panel to excuse the obvious tactics of Detective Haughey, an experienced member of a fugitive apprehension team. 2-ER-122–23. As the district judge and the government admitted, Detective Haughey was "questioning" Mr. Alvarez without *Miranda* warnings while he was in custody in the van. 1-ER-5; 3-ER-253. Once at the stadium, Detective Haughey then misread the *Miranda* warnings at the stadium, downplayed their importance, and omitted one of their references to an attorney. 3-ER-310–12, 334. He also referred back to his own statement in the van—

20

that pointing a laser was a "stupid" thing to do—and falsely claimed that Mr. Alvarez had said it. 3-ER-312. Detective Haughey then delayed having Mr. Alvarez sign the *Miranda* waiver until after he had confessed. 3-ER-312, 330. Finally, he used coded language to indicate to his colleague that they had managed to get Mr. Alvarez to waive his right to counsel. 3-ER-330.

These are not the actions of an officer who is scrupulously attempting to comply with *Miranda*. Had the court and the panel properly placed the burden to disprove deliberateness on the government, these questionable tactics would have made it challenging, if not impossible, for the government to meet its burden.

Additionally, the district court seemed to incorrectly believe that the "two-step technique" requires a *shared* plan among multiple officers. *See* 1-ER-15, 17 (finding "no evidence" of any *Seibert* violation because the officers' plan was to "wait till we get [suspects] to the stadium" to interrogate them). The panel then found "no clear error" in this conclusion. *Alvarez*, 2022 WL 17958625, at *2. But nothing in *Seibert* jurisprudence requires more than one officer to act deliberately. Here, Detective Haughey: 1) interrogated Mr. Alvarez without *Miranda*

warnings in the van; 2) gave inaccurate and deemphasized warnings at the stadium; and then 3) referred back to incriminating statements in the van to elicit a confession. This was more than enough to show that the government did not meet its burden to show an absence of deliberateness.

Because the panel created an intercircuit split by misplacing the burden to show deliberateness, this Court should rehear this case en banc to harmonize its holding with every other circuit to have decided the issue.

## CONCLUSION

For these reasons, the Court should grant Mr. Alvarez's petition for panel rehearing or rehearing en banc.

Respectfully submitted,

*/s/ Kara Hartzler*

DATED:     February 9, 2023     KARA HARTZLER
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467

Attorneys for Defendant-Appellant

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 21-50068

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App.
P. 32(a)(4)-(6) and **contains the following number of words**: | 3,985 | .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Kara Hartzler | **Date** | 2/9/23

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/2021*